UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| In re | ) | Case No. 10-03328 |
| --- | --- | --- |
| | ) | Chapter 7 |
| STACY MARIE JORGENSEN, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | Adv. Pro. No. 11-90016 |
| STACY MARIE JORGENSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| EDUCATIONAL CREDIT | ) | |
| MANAGEMENT CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The trial in this adversary proceeding was held on January 10, 2012. Plaintiff Stacy Marie Jorgensen represented herself. Terri-Ann E.S. Nagata, Esq. and Theodore D.C. Young, Esq. represented Defendant Educational Credit Management Corporation ("ECMC").

Based on the evidence presented at trial, the court makes the following:

# FINDINGS OF FACT

1. Ms. Jorgensen is forty four years old. She is single and has no dependents. She earned a bachelor of science degree in wildlife biology from the University of Montana in 1992, a master of science degree in botany from the University of Georgia in 1996, and a Ph.D. in geography from the University of Georgia in 2002. She financed her graduate education partly with student loans.

2. ECMC currently holds Ms. Jorgensen's student loans. Ms. Jorgensen owes ECMC $36,284.81 plus interest at six percent per annum from November 17, 2011.

3. From January 2002 until June 2004, Ms. Jorgensen worked as a visiting assistant professor of geography at Ohio University. From August 2004 to the present, she has worked as an assistant professor of geography at the University of Hawai'i at Manoa.

4. Ms. Jorgensen made timely payments on her student loans from January 2002, when payments first became due, until June 2010. She sought and obtained payment forebearance beginning in July 2010. She has made no payments since the forebearance period ended. The loan is currently payable at $270.07 per month.

5. In early 2010, a blood test, which Ms. Jorgensen obtained for life

U.S. Bankruptcy Court - Hawaii   #11-90016   Dkt # 44   Filed  01/20/12   Page 2 of 16

insurance underwriting purposes, yielded an abnormal result. Further testing revealed that Ms. Jorgensen suffered from stage IIB pancreatic adenocarcinoma. Cancer of the pancreas is one of the most deadly cancers.

6. Ms. Jorgensen elected to seek treatment of her cancer at the M.D. Anderson Cancer Center in Houston, Texas ("MDACC"). This was a reasonable decision given that MDACC has substantially more experience and expertise with pancreatic cancer than any facility in Hawaii and initial tests in Hawaii failed correctly to identify Ms. Jorgensen's cancer.

7. After a course of chemotherapy and radiation treatments to reduce the size of the tumor, Ms. Jorgensen underwent a pylorus-preserving pancreaticoduodonectomy (sometimes called a Whipple procedure) on May 19, 2010. Surgeons removed the head of her pancreas, her gall bladder, a section of her duodenum, and thirty five lymph nodes. She returned to Hawaii and underwent further chemotherapy from July to October 2010.

8. On her physicians' advice, she receives (and will continue to receive for several years) quarterly checkups to look for possible recurrence of her cancer. She has chosen to receive these checkups at MDACC. This is a reasonable decision given the seriousness of her cancer, the high risk of recurrence, the desirability of continuous care by the same medical team to increase the chance of

3

U.S. Bankruptcy Court - Hawaii   #11-90016   Dkt # 44   Filed 01/20/12   Page 3 of 16

early detection and proper treatment of any recurrence, and the initial failure correctly to identify her cancer in Hawaii.

9. To date, there is no evidence that her cancer has recurred. There is still a significant risk of recurrence, however, as evidenced by her doctors' recommendation of frequent and intensive followup over a period of years. Further, Ms. Jorgensen suffers serious aftereffects from her cancer treatment. She has pancreatic enzyme insufficiency, high blood pressure, and anemia, among other conditions. Her anemia has proven particularly stubborn. As a result, she has significantly less energy than she had before her treatment. She reduced her normal workload by 25% during the 2010 - 2011 academic year, after her surgery and during her post-surgical chemotherapy. She resumed a full time workload in academic 2011-12 but she became so fatigued that, at her request, another professor took over teaching duties for one of her two classes in the middle of the fall semester.

10. Ms. Jorgensen's salary for the academic year 2011-12 is $73,236. Her monthly take home pay is about $3,750. Her income for the academic year 2010-11 was less because of her reduced schedule. (She used up her accumulated sick leave during her surgical and presurgical treatment, in the first half of calendar 2010.)

U.S. Bankruptcy Court - Hawaii   #11-90016   Dkt # 44   Filed  01/20/12   Page 4 of 16

11. There is little likelihood that Ms. Jorgensen's income will increase in the foreseeable future. Her current job is uncertain. She has applied for tenure. Her department recommended against her tenure by a vote of two to three. (The loss of her job would be particularly devastating for Ms. Jorgensen because she would also lose her employer-provided health insurance and would have great difficulty replacing it due to her history of cancer.) She has applied for jobs with the federal government, but has been unsuccessful. Given the federal government's budget situation, federal jobs will probably be scarce for some time. It is not clear that her health will permit her to carry a full-time workload in the future. Therefore, it is significantly more likely that her income will fall than rise.

12. Ms. Jorgensen's current average monthly expenses are approximately $4,100. Assuming that she is able to continue full-time work at her current job, she would have to reduce her expenses by about $350 per month before she would have any money to make student loan payments.

13. For the most part, Ms. Jorgensen lives a frugal life. ECMC does not challenge most of her expenses.

    a. ECMC points out that Ms. Jorgensen spends $75 for cellular telephone service and $50 for high speed internet access at her home. Ready access to online data at all times, at work, at home, and while traveling, is

U.S. Bankruptcy Court - Hawaii   #11-90016   Dkt # 44   Filed 01/20/12   Page 5 of 16

indispensable to Ms. Jorgensen's work as a professor.

      b.    Ms. Jorgensen's uninsured medical expenses average $594.05 per month plus contributions of $200 per month to a flexible spending account. Ms. Jorgensen could reduce these expenses if she were to receive followup care in Honolulu rather than Houston, but her decision to stay with her doctors at MDACC is eminently reasonable and necessary for her to maintain a minimal standard of living.

      c.    Ms. Jorgensen's monthly car payment is $362.73. Her car is an economical subcompact which she purchased new for the modest price of about $17,000. ECMC criticizes this expense for two reasons.

      i.    First, Ms. Jorgensen purchased this car in December 2011, replacing an older vehicle, which was unencumbered. Ms. Jorgensen points out that she had recently spent several thousand dollars to repair her older car and that it needed additional repairs expected to cost several thousand dollars more. Her current car payment is modest, and her decision to replace an aging car in need of major repairs with a new, reliable, and inexpensive car with a warranty was reasonable and consistent with a minimal standard of living.

      ii.    Second, Ms. Jorgensen plans to leave the new car in Texas, with her sister, while she works abroad from late January until early June

U.S. Bankruptcy Court - Hawaii   #11-90016  Dkt # 44   Filed 01/20/12   Page 6 of 16

2012. (See below.) Ms. Jorgensen did not adequately explain why she did not defer the car purchase until her return from her foreign teaching assignment.

        d.      In 2011, Ms. Jorgenson spent about $5,000 (in addition to insurance benefits of $1,000) for orthodontic treatment. She paid for this using a one-time "summer salary" payment. This expense was not necessary to allow Ms. Jorgensen to maintain a minimal standard of living, but it has already been incurred and will not recur.

    14.    Ms. Jorgensen's expenses will fall between late January and early June 2012. During the spring semester of 2012, Ms. Jorgensen will teach two classes in Paris, in a study abroad program offered by the University of Hawaii. She will carry her normal teaching load of two courses and receive her normal salary and benefits. In addition, she will receive one round trip air fare and an apartment free of charge (although she will be required to pay for utilities and similar items). She will give up her apartment in Honolulu and rent a new one when she returns; therefore, she will incur no rent expense for the next five and one half months. Based on the fact that the military per diem living allowance for Paris is higher than for Hawaii, she expects that her normal living expenses for food and the like will be higher than usual, but she is uncertain of how much. She intends to use the surplus income she will earn (due to the lack of rent expense) to

7

prepay her auto loan in part.

15. After Ms. Jorgensen returns to Hawaii from Paris, her living expenses will probably be about the same as they are now.

16. Ms. Jorgensen commenced her chapter 7 case on October 29, 2010.

17. Ms. Jorgensen has very few assets. She has no real property, virtually no savings, modest personal possessions, and a very small pension entitlement. She owes about about $2,750 of state taxes which she is repaying at $50 per month. As of the date of bankruptcy, she owed almost $50,000 of credit card debt, which has been discharged.

18. ECMC informed Ms. Jorgensen of various flexible repayment options that might be available to her. Ms. Jorgensen declined each of these options because, in her view, none of them took into account the extremely high medical expenses attributable to her cancer treatment and followup.

Based on these findings of fact, the court makes the following:

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the subject matter and personal jurisdiction over ECMC. This is a core matter. The court has both statutory and constitutional authority to enter a final judgment.

2. Section 523(a)(8) provides that:

8

> A discharge [in a chapter 7 case] . . . does not discharge an individual debtor from any debt –
>
> (8) unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents, for --
>
>     (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>
>     (ii) for an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>
>     (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual . . . .

11 U.S.C. § 523(a)(8).

3. Ms. Jorgensen's debts to ECMC are of the kind which section 523(a)(8) generally excepts from the discharge.

4. In order to establish undue hardship under section 523(a)(8), the debtor bears the burden of proving that: (a) the debtor cannot maintain, based on current income and expenses, a minimal standard of living for the debtor and the debtor's dependents if forced to repay the loans; (b) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (c) the debtor has made good faith

efforts to repay the loans. In re Mason (Educational Credit Management Corp. v. Mason), 464 F.3d 878 (9th Cir. 2006); In re Pena, 155 F.3d 1108, 1112 (9th Cir. 1998), citing In re Brunner, 831 F.2d 395 (2d Cir. 1987). The debtor's burden is stringent. The debtor must show more than merely tight finances and more than garden-variety hardship.

5. The court can discharge a student loan obligation in part, so long as the debtor carries the burden of proving that payment of the discharged part would impose an undue hardship. In re Saxman 325 F.3d 1168 (9th Cir. 2003).

6. The first prong of the Brunner test requires the debtor to show that, based on the debtor's current income and expenses, the debtor cannot maintain a minimal standard of living if required to pay the student loan debts.

7. Aside from the period during which she will teach abroad, Ms. Jorgensen's monthly income, after taxes and required withholdings, is (and will continue to be) about $350 less than the monthly expenses which she must pay in order to maintain a minimal standard of living. Some of her expenses are higher than other people might incur (for example, telephone and internet service and health care costs), but these expenses are essential to Ms. Jorgensen due to the nature of her employment and her serious health issues.

8. While Ms. Jorgensen teaches in Paris, from late January until early

U.S. Bankruptcy Court - Hawaii    #11-90016    Dkt # 44    Filed  01/20/12    Page 10 of 16

Jun 2012, her expenses will be significantly lower because she will not pay rent. (She believes her other living expenses will rise, but she offered no evidence of the amount of such increase and therefore failed to carry her burden of proof on that point.) During that period of about five and one-half months, her income will exceed her expenses by approximately $1,100 per month, or a total of $6,050. Ms. Jorgensen testified that she intended to use this surplus income to prepay her auto loan, but this prepayment is not necessary for her to maintain a minimal standard of living.

9. Ms. Jorgensen's claimed expenses during her teaching stint in Paris include car payments of $362.73 per month. During that period, Ms. Jorgensen's sister will be using the car in Texas. Ms. Jorgensen did not satisfactorily explain why she chose to purchase the car before her stay in Paris rather than after her return. The car payments for this five and one-half month period, totaling $1,995.02, are not necessary to allow Ms. Jorgensen to maintain a minimal standard of living.

10. The second prong of the Brunner test requires the debtor to show "circumstances enabling the court to predict the longevity of the financial hardship, on a case-by-case basis." In re Nys, 308 B. R. 436, 443 (B.A.P. 9th Cir. 2004), aff'd, 446 F.3d 938 (9th Cir. 2006). The court must determine whether the

11

U.S. Bankruptcy Court - Hawaii   #11-90016　Dkt # 44   Filed  01/20/12   Page 11 of 16

debtor faces any insurmountable barriers to financial recovery, which will prevent the debtor from repaying the student loans for several years.  These barriers may include (among others) serious mental or physical disability of the debtor or the debtor's dependents, which prevents employment or advancement; the debtor's obligations to care for dependents; lack of or severely limited education; poor quality of education; lack of usable or marketable job skills; underemployment; maximized income potential in the chosen educational field, and no other more lucrative job skills; limited number of years remaining in work life to allow payment of the loan; age or other factors that prevent retraining or relocation as a means for payment of the loan; lack of assets, whether or not exempt, which could be used to pay the loan; potentially increasing expenses that outweigh any potential appreciation in the value of the debtor's assets and/or likely increases in the debtor's income; and lack of better financial options elsewhere.  Id. at 446-47.  The court must also consider the debtor's future prospects for employment.  Id. at 444.

11.    It is highly likely that Ms. Jorgensen' financial predicament will persist for many years, and possibly the rest of her life.  The most important factor that caused her financial problem is her cancer.  Her health is remarkably good, considering the seriousness of her illness, but her cancer is nevertheless a major

12

U.S. Bankruptcy Court - Hawaii   #11-90016　Dkt # 44　Filed  01/20/12　Page 12 of 16

problem and a significant danger. Her illness will make it difficult for her to maintain, and virtually impossible for her to improve, her financial position. She cannot afford to make any student loan payments now, and, sadly, it is much more likely that her situation will get worse rather than improve.

12. At present, she is fully employed and well compensated in the profession for which she has trained. There is little likelihood that she could improve her income by relocating, retraining, or otherwise. Indeed, there is a significant chance that her income will fall; she may be denied tenure and lose her current job, or her health may preclude her from working full time. She has no material assets, exempt or not, which she could use to repay or reduce the student loan debts.

13. The third prong of the Brunner test, "good faith," requires the debtor to show that the debtor has made appropriate efforts to repay the loan by maximizing income and minimizing expenses and to negotiate an affordable repayment plan. Id. at 499.

14. The debtor's inability to repay the student loans must result from factors beyond the debtor's reasonable control, and not the debtor's own willfulness or negligence. "Declining to obtain additional work is not a factor beyond [the debtor's] reasonable control." Id. at 500.

13

15. Ms. Jorgensen's inability to repay her student loans is the direct result of her cancer, a fact which is beyond her control and for which she is not responsible.

16. Ms. Jorgensen's decision to replace her old car with a new one is consistent with good faith. She needs a reliable vehicle in order to maintain a minimal standard of living. Her old vehicle needed expensive repairs. Her new car is modest, inexpensive, and reliable. Her decision was reasonable and appropriate. Further, even if she had not purchased the new car and incurred the car payment obligations, her monthly expenses would still exceed her monthly income, leaving her with no money with which to make any student loan payments.

17. As noted above, the timing of her acquisition of the new car is questionable. This issue is more appropriately analyzed under the first prong of the Brunner test.

18. Ms. Jorgensen's decision to obtain orthodontia is relevant to her good faith; she could have used the summer salary payment to reduce her student loans rather then pay for the treatment. The good faith determination should be based, however, on the totality of the circumstances, and not a single factor. Although her choice to obtain elective orthodontic treatment instead of repaying part of her

U.S. Bankruptcy Court - Hawaii    #11-90016    Dkt # 44    Filed  01/20/12    Page 14 of 16

student loans weighs against a good faith determination, the entirety of Ms. Jorgensen's conduct is consistent with her good faith. She consistently serviced her student loans until she incurred a devastating and life threatening illness. She has handled her finances responsibly, has maximized her income, and has generally minimized her expenses. The orthodontic treatment may not have been medically essential, but it was not purely cosmetic either, in that it increased her comfort and probably improved the longevity of her dental health.

19. Ms. Jorgensen has acted in good faith despite her refusal to consider the repayment options offered by ECMC. All of those plans require the payment of a percentage of the borrower's income; none of them take account of the extraordinarily high medical expenses which Ms. Jorgensen now incurs and will continue to incur for some time.

20. In summary, Ms. Jorgensen has satisfied the requirements for a partial discharge of her student loan debt. Because she will have no rent expense, and could and should have avoided any car payment, while she is teaching in Paris, she can pay ECMC a total of $8,045.02 and maintain a minimal standard of living. She could not, however, pay a greater amount while maintaining a minimal standard of living. Her financial problems will likely continue indefinitely. She has acted in good faith in attempting to repay her student loans.

21. The plaintiff is entitled to judgment against the defendant determining that all of the plaintiff's debts to the defendant except for $8,045.02 are dischargeable.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: 01/19/2012